I,MARCUS, Justice. *
This matter comes before the court on the recomméndation of the Judiciary Commission of Louisiana that Judge Sharon K. ■ Hunter of the Criminal District Court for the Parish of Orleans, State of Louisiana be publicly censured and ordered to reimburse the Commission the costs incurred in the investigation and prosecution of this case. The Commission conducted an investigatory hearing, issued findings of fact and conclusions of law, and determined that Judge Hunter violated Canons 1 and 2A of the Code of Judicial Conduct and engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute pursuant to La. Const, art. V, '§ 25(C).
The Commission’s charge relates to Judge Hunter’s ownership of two properties in the Village de l’Est development in New Orleans East. Judge Hunter purchased the properties, located at 13127 Lemans Street and 4801 Bergerac Street, in 1990. At that time, Judge Hunter had just left her job at the City Attorney’s office and she used all of her retirement savings to buy the two properties from the Veterans Administration for $43,-800. The properties were in a distressed condition at the time of purchase and Judge Hunter intended to renovate them and realize investment income. Renovation work was done to both properties and one was 12rented for a year to eighteen months, but ultimately both became vacant and were substantially vandalized. Judge Hunter testified that vandals destroyed more than $25,000 of work done inside the houses. She further stated that because of all the damage done, she could never “get it back together” to restore the properties.
Judge Hunter assumed the bench by pro tempore appointment of this court on October 8,1996. She was inducted into office and began her term as judge for Division C of the Criminal District Court of Orleans Parish on January 1, 1997. During her campaign for judicial office, the condition of the two properties became an issue. Members of the Village de l’Est Neighborhood Association complained to the media that Judge Hunter did not adequately maintain the properties. There were problems with tall grass and weeds, demolition debris piled up in the backyard of the Bergerac Street property, and soil subsidence' creating a space under the houses. In addition, the doors and windows of the properties were not properly boarded shut.
Judge Hunter admitted that she encountered many difficulties in attempting to maintain the properties. The properties were boarded shut on several occasions, but because the lots were located in areas with rampant vandalism, each time the boards were pried loose, sometimes as soon as the day after doors and windows were boarded shut. Judge Hunter testified that about once every month or so she would call someone up and send them out’to check on the properties. The lots were mowed from time to time and Judgé Hunter had dirt delivered on one occasion in an effort to alleviate the soil subsidence problems underneath the houses. Judge Hunter realized that she had made a bad investment and “gotten in over her head.” Once elected, she focused most of her attention on trying to remedy the situation by selling the two properties.
In response to neighborhood association complaints made during the campaign, charges were filed against Judge Hunter before the election on August 15, 1996 and about a month after she was ^appointed pro tempore on November 14, 1996.' On April 1, 1997, Judge Hunter pled “No Contest” before the Municipal Court for the City of New Orleans to six counts of violating municipal ordinances relating to high grass, debris, and rat harborage on the properties. The pleas Of “No Contest” and other problems with the properties were publicized in The Times-Picayune. Judge Hunter sold the properties at a loss on August 15,1997.
■ On May 27, 1997,[1] the Commission filed the following formal charge against Judge Hunter:
*1190 A. That you, Judge Sharon K. Hunter, on April 1, 1997 pled “No Contest” before the Municipal Court for the City of New Orleans, in the matters entitled City of New Orleans v. Sharon Hunter, Case Nos. 599913A, 599921A, 606559A, 606563A, 606571A, 606579A, to six (6) counts of violating municipal penal ordinances, to-wit:
Case No. Municipal Ordinance . Date of Offense Location Plea Sentence
599913A 17271 MCS 66-313 (Relative to: Does not mow grass and remove debris) 8/16/96 13127 Lemans St. No Contest $100.00 Fine
599921A 17271 MCS'66-313 (Relative to: Does not mow grass and remove debris) 8/15/96 4801 Bergerac St. No Contest $100.00 Fine
606559A 17271 MCS 82-403 (Rat Harborage Prohibited) 11/14/96 13127 Lemans St. No Contest • $50.00 Fine
606563A 17271 MCS 66-313 (Relative to: Does not mow grass and remove debris) 11/14/96 13127 Lemans St. No Contest $100.00 Fine
606571A 17271 MCS 66-313 (Relative to: Does not mow grass and remove debris) 11/14/96 4601 Bergerac St. No Contest $100.00 Fine
606579A 17271 MCS 82-403 (Rat Harborage Prohibited) 11/14/96 401 Bergerac St. No Contest $50.00 Fine
B. Despite pleading “No Contest” to the municipal charges listed in Paragraph A resulting from offenses that occurred on August 15, 1996 and November 14, 1996 that you, Judge Sharon K. Hunter, have not rectified the problems and deficiencies for which you were cited at 4801 Bergerac St. and 13127 Lemans St. in the City of New Orleans.
UC. By reason of the foregoing Sections. A and B, you have:
(1) Violated Canons 1 and 2A, of the Code of Judicial Conduct, adopted by the Supreme Court of Louisiana, effective July 8,1996; and/or
(2) Engaged in persistent and public conduct prejudicial to the administration of -justice that brings that judicial office into disrepute.
The Commission conducted a hearing on this matter on August 23, 1997. On February 18, 1998, the Commission issued its findings of fact and conclusions of law, and issued a recommendation regarding the appropriate measure of discipline in this case. The Commission found, as a matter of law, that Judge Hunter violated Canons 1 and 2A of the Code of Judicial Conduct and engaged in persistent and public conduct prejudicial to the administration of justice that brings that judicial office into disrepute by pleading “No Contest” to six counts of violating municipal ordinances and in not rectifying the problems and deficiencies for which she was cited. The Commission recommended discipline in the form of public censure.
The Louisiana Constitution vests this court with exclusive original jurisdiction in judicial disciplinary cases. La. Const, art. V, § 25(C). Though we are in no way bound by the findings and determinations of the Commission, we receive no new evidence and consider only the testimony and other evidence presented at a hearing before the Commission. In re Decuir, 95-0056, p. 7 *1191 (La. 5/22/95), 654 So.2d 687, 692; In re Whitaker, 463 So.2d 1291, 1298 (La.1985).
The- grounds for disciplinary action against a judge are set forth in La. Const, art. V, § 25(C), which provides, in pertinent part:
On recommendation of the judiciary commission," the supreme court may censure, suspend with or without salary, remove from office, or retire involuntarily a judge for willful misconduct relating to his official duty, willful and persistent failure to perform his duty, persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute, conduct while in office which would ^constitute a felony, or conviction of a felony.
The Commission found that Judge Hunter engaged in persistent and public conduct prejudicial to the administration of justice that brings the judicial office into disrepute. In addition, the Commission determined that Judge Hunter violated Canons 1 and 2A of the Code of Judicial Conduct. Canon 1 provides:
A Judge Shall Uphold the Integrity and Independence of the Judiciary
An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
Canon 2A states:
A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All Activities
A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
The Code of Judicial Conduct is binding on all members of the judiciary, and violations of its Canons may serve as the basis for disciplinary action provided for by La. Const, art. V, § 25(C). In re Marullo, 96-2222, p. 3 (La. 4/8/97), 692 So.2d 1019, 1021; Decuir, 95-0056 at p. 7-8, 654 So.2d at 692.
Before this court can discipline a judge, proof of the charge or charges must be clear and convincing. In re Ouirk, 97-1143, p. 4 (La. 12/12/97), 705 So.2d 172, 176. The Commission contends that both Canons 1 and 2A of the Code of Judicial Conduct are directly implicated by Judge Hunter’s plea of “No Contest” to the municipal ordinance violations and her continuing pattern and practice of misconduct. The Commission determined that “Judge |.6Hunter has not enforced or personally observed ‘high standards of conduct so that the integrity and independence of the judiciary may be preserved’ ” and that “[her] actions represent a failure to ‘respect and comply with the law’ and a failure to ‘act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.’ ”
While we recognize that Judge Hunter did not adequately maintain the two properties in Village de l’Est, we find ample evidence in the record that she did make significant efforts to do so. Furthermore, Judge Hunter was not a member of the judiciary when she used her retirement savings to purchase the properties, nor throughout most of her period of ownership. Upon taking office, Judge Hunter did all she could to sell the properties and put an end to what turned out to be a bad investment. She sold the properties at a loss after ten months on the bench. Judge Hunter admitted to the Commission that she had “gotten in over her head” with the two properties. We note her testimony that she has not taken a day off since she assumed the bench.
In order to safeguard the integrity and honor of the judiciary, judges must maintain high standards of conduct in their professional and personal endeavors. We need not decide whether or not Judge Hunter’s conduct violated Canons of the Code of Judicial Conduct and formed a basis for disciplinary action provided for by the Louisiana Constitution because, although we do not condone *1192 Judge Hunter’s conduct, we find that it did not rise to such a level as to warrant official judicial discipline.

DECREE

The recommendation of the Judiciary-Commission of Louisiana is hereby rejected; no official discipline imposed.

 Kimball, J., not on panel. Rule IV, Part 2/ § 3.

. The formal charge was originally filed on May 20, 1997, but due to a typographical‘error, it was amended and refiled on May 27, 1997.