815 So.2d 813 (2002)
In re Judge John A. SHEA.
No. 2002-O-0643.
Supreme Court of Louisiana.
April 26, 2002.
*814 Nancy E. Rix, Commission Legal Counsel, Hugh M. Collins, PhD., Chief Executive Officer.
Steven Scheckman, Special Counsel, Mary Whitney, Asst. Special Counsel.
Fred L. Herman, New Orleans, for Respondent.
PER CURIAM.[*]
This matter comes before the court on the recommendation of the Judiciary Commission of Louisiana ("Commission"), pursuant to La. Const. Art. V, § 25(C), that John A. Shea, Judge of the Municipal Court for the City of New Orleans, be publicly censured and ordered to pay the cost of the prosecution of these proceedings. For the reasons that follow, we adopt the recommendation of the Commission and publicly censure Judge Shea, as well as order him to pay costs.

FACTS AND PROCEDURAL HISTORY
Judge John Shea assumed the office of Judge of the Municipal Court for the City of New Orleans on January 1, 1979. He has continuously served in that capacity since that time, having been reelected to his seat twice without opposition. Judge Shea became Chief Judge of the Municipal Court in 1997.
On February 2, 2000, the Commission received an anonymous complaint, alleging that Judge Shea was violating certain ethical canons by actively participating in the campaign to elect his son, Scott Shea, to the New Orleans City Council. The Commission notified Judge Shea of the letter. He responded by letter dated March 8, 2000, in which he admitted to attending various political functions in connection with his son's race, but denied making any speeches or public statements on behalf of his son.
Subsequently, the Commission authorized an investigation into the matter. During the investigation, the Commission determined that between October 13, 1994 and March 6, 1996, Judge Shea made contributions from his excess campaign funds to seven candidates. These contributions totaled $1,462.44. Additionally, it determined that between July 19, 1996 through May 1, 2000, Judge Shea made contributions from his excess campaign funds to sixteen different candidates for public office. These contributions totaled $12,250.00.
Based on its investigation, the Commission filed two sets of formal charges against Judge Shea. The first set of formal charges was based on the contributions made by Judge Shea between October 13, 1994 and March 6, 1996. The Commission alleged this conduct violated Canons 1,[1] *815 2[2] and 7 A(1)(b) and (c)[3] of the Code of Judicial Conduct (1976). The second set of formal charges was based on the contributions made by Judge Shea from July 19, 1996 through May 1, 2000. The Commission alleged this conduct violated Canons 1,[4] 2,[5] and 7 A(1)(b) and (d)[6] of the Code of Judicial Conduct (1996), which became effective July 8, 1996.

PROCEEDINGS BEFORE THE COMMISSION
Judge Shea appeared at the formal hearing before the Commission. He testified that he believed a judge could make contributions to other candidates from the judge's excess campaign contributions, although he admitted that he now knew that view was mistaken. Judge Shea testified he did not remember anyone ever telling him that a judge could not make contributions to other candidates for elective office. He introduced a videotape from the cable television program "It's the Law," which was hosted by a local appellate judge and involved the issue of campaign finance. During that program, one of the panelists stated that a judge could retain control over campaign funds "in such a way today that you can direct it to your favorite charity or to other candidates."
Judge Shea testified he was aware of Advisory Opinion 44, which stated in pertinent part "[t]he Code of Judicial Conduct prohibits a judge from making a contribution to a candidate for any office, except when he himself is a candidate." He did not recall reading Advisory Opinion 136, which stated in pertinent part "[i]t is ethically impermissible for a Judge, while a candidate for reelection, to purchase with a check drawn on his/her campaign account, *816 tickets to reelection fund raisers for non-judicial candidates."
The Special Counsel for the Commission introduced evidence that Judge Shea attended two continuing legal education programs sponsored by the Louisiana Judicial College in 1997 and 1998, at which campaign ethics were addressed. During these seminars, the instructors addressed the impropriety of a judge making contributions to candidates for political office.

FINDINGS OF THE COMMISSION
As to the first set of formal charges involving the contributions made between October 13, 1994 and March 6, 1996, the Commission found that Judge Shea's conduct violated Canon 7 A(1)(b) and (c) of the Code of Judicial Conduct (1976). The Commission found these contributions were prohibited by the Code and constituted wrongful public endorsements by Judge Shea of these candidates. The Commission further concluded Judge Shea's conduct violated Canons 1 and 2 A of the Code of Judicial Conduct (1976), because he failed to respect and comply with the law, and failed to act in a manner that promoted public confidence in the integrity and impartiality of the judiciary.
As to the second set of formal charges involving contributions made between July 19, 1996 through May 1, 2000, the Commission found Judge Shea's conduct violated Cannon 7A(1)(b) and (d) of the Code of Judicial Conduct (1996). The Commission found these contributions were prohibited by the Code and constituted wrongful public endorsements by Judge Shea of these candidates. The Commission further concluded Judge Shea's conduct violated Canons 1 and 2 A of the Code of Judicial Conduct (1996), because he failed to respect and to comply with the law, and failed to act in a manner that promoted public confidence in the integrity and impartiality of the judiciary.
The Commission made a finding of fact that Judge Shea's testimony was truthful when he stated he did not realize he was violating the Code of Judicial Conduct. However, the Commission did not deem his failure to understand the applicable rules to be an excuse for his violation. Likewise, the Commission found the erroneous statement about campaign contributions on the television program "It's the Law" did not excuse Judge Shea's conduct.
The Commission recognized that Judge Shea never attempted to hide the fact that he had contributed to numerous candidates for public office, including candidates for judicial office. It also found Judge Shea fully cooperated with the Commission and the Special Counsel during these proceedings.
Considering these factors, the Commission recommended the Judge Shea be publicly censured. It also recommended he be assessed with costs in the amount of $976.19.
Shortly after the Commission's recommendation was filed in this court, Judge Shea and the Special Counsel for the Commission filed a stipulation in which Judge Shea accepted the findings of fact, conclusions of law and recommendations of the Commission. Judge Shea also waived oral argument before the court and asked that the matter be considered based on the record developed before the Commission.

DISCUSSION
Because Judge Shea and the Special Counsel of the Commission have stipulated to the facts, including those in mitigation, the sole issue presented is the appropriate measure of discipline in this case. In re: Decuir, 95-0056 *817 (La.5/22/95), 654 So.2d 687. In determining an appropriate sanction, we are mindful that the primary purpose of the Code of Judicial Conduct is to protect the public rather than discipline judges. In re: Harris, 98-0570 (La.7/8/98), 713 So.2d 1138; In re: Marullo, 96-2222 (La.4/8/97), 692 So.2d 1019.
While we recognize Judge Shea did not intentionally violate the Code of Judicial Conduct, it is clear his contributions to other candidates is absolutely prohibited under the facts of this case. His failure to scrupulously abide by the provisions of the Code of Judicial Conduct has the potential to undermine public confidence in the judiciary. As we explained in In re: Wimbish, 98-2882, p. 5 (La.4/13/99), 733 So.2d 1183, 1187:
The canons were designed to promote a standard for judicial conduct that continuously reaffirms the integrity of the judiciary. Judges hold a unique position of administering justice. They symbolize the law, and, accordingly, their actions reflect favorably or unfavorably on the judicial system. For this reason, it is important that judges comply with the laws and rules governing their conduct in a manner which promotes public confidence.
In determining the appropriate sanction for a judge who is subject to a disciplinary action, this court has considered several non-exclusive factors. In re: Best, 98-0122 (La.10/20/98), 719 So.2d 432; In re: Chaisson, 549 So.2d 259 (La.1989). These factors are:
(a) whether the misconduct is an isolated instance or evidenced a pattern of conduct; (b) the nature, extent and frequency of occurrence of the acts of misconduct; (c) whether the misconduct occurred in or out of the courtroom; (d) whether the misconduct occurred in the judge's official capacity or in his private life; (e) whether the judge has acknowledged or recognized that the acts occurred; (f) whether the judge has evidenced an effort to change or modify his conduct; (g) the length of service on the bench; (h) whether there have been prior complaints about this judge; (i) the effect the misconduct has upon the integrity of and respect for the judiciary; and (j) the extent to which the judge exploited his position to satisfy his personal desires.
Applying these factors to the instant case, we find Judge Shea's misconduct was part of a pattern of conduct which occurred over a period of several years. The misconduct occurred outside of the courtroom and in the judge's private capacity. Judge Shea has acknowledged the acts occurred and has changed his conduct, indicating he will make no further political contributions while on the bench. The record reveals that Judge Shea has served on the bench for over twenty years and has never been the subject of prior disciplinary charges. As noted earlier, the misconduct at issue has the potential to erode public confidence in the integrity of the judiciary. However, there is no evidence that Judge Shea exploited his position to satisfy his personal desires.
In addition to these factors, we find it significant that Judge Shea acted in good faith, based upon his sincere belief that it was permissible for a judge to make contributions to other candidates from the judge's excess campaign funds. Good faith is not an affirmative defense to a judicial disciplinary charge; however, it may be considered as a mitigating factor which militates in favor of a lesser sanction. Marullo, 96 2222 at p. 7, 692 So.2d at 1023; Chaisson, 549 So.2d at 267.
Considering all these facts, we conclude the sanction of public censure is appropriate. *818 Accordingly, we will accept the recommendation of the Commission and publicly censure Judge Shea, as well as order him to pay costs of the proceedings.

DECREE
For the reasons assigned, it is ordered that Judge John A. Shea be publicly censured for violating Canons 1, 2 A and 7 A(1)(b) and (c) of the Code of Judicial Conduct (1976) and Canons 1, 2 A and 7 A(1)(b) and (d) of the Code of Judicial Conduct (1996). It is further ordered that Judge John A. Shea reimburse the Louisiana Judiciary Commission $976.19, which is the amount of costs incurred during the prosecution and investigation of this case.
NOTES
[*] Kimball, J. recused.
[1] Canon 1 of the Code of Judicial Conduct (1976) provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
[2] Canon 2 of the Code of Judicial Conduct (1976) provides, in pertinent part:

A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
[3] Canon 7 A(1)(b) and (c) of the Code of Judicial Conduct (1976) provides:

A judge or a candidate for election to judicial office should not:
(b) make speeches for a political organization or candidate or publicly endorse a candidate for public office;
(c) solicit funds for or pay an assessment or make a contribution to a political organization or candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions....
[4] Canon 1 of the Code of Judicial Conduct (1996) provides:

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and shall personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code are to be construed and applied to further that objective. As a necessary corollary, the judge must be protected in the exercise of judicial independence.
[5] Canon 2 of the Code of Judicial Conduct (1996) provides, in pertinent part:

A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
[6] Canon 7 of the Code of Judicial Conduct (1996) provides, in pertinent part:

A judge or judicial candidate shall not:
* * *
(b) publicly endorse or publicly oppose another candidate for public office.
* * *
(d) except to the extent permitted by these Canons, solicit funds for, pay an assessment to, or make a contribution to a political organization or candidate or purchase tickets for political party dinners or other campaign functions.